**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**DETONIO HAWKINS**                                                     **PLAINTIFF**

**v.**                                 **NO. 2:24-CV-00016-BSM**

**MICHAEL YOCUM, in his Individual and Official**
**Capacities; and JOHN DEXTER, in his Individual**
**And Official Capacities**                                      **DEFENDANTS**

<u>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>
<u>**OF DEFENDANTS MICHAEL YOCUM AND JOHN DEXTER**</u>

<u>**INTRODUCTION AND FACTUAL BACKGROUND**</u>

On August 9, 2021, Officer Yocum witnessed Plaintiff Detonio Hawkins ("Plaintiff")

driving along Interstate 55. [SUMF ¶ 1]. Officer Yocum saw Plaintiff driving with a phone in

hand and, at least according to Officer Yocum, driving in multiple lanes of traffic. [SUMF ¶ 2].

At some point before Plaintiff was pulled over, he began recording a video on his cell phone,

which he held at steering wheel level. [SUMF ¶ 3]. Officer Yocum called Plaintiff's license plate

information into dispatch, which informed him that Plaintiff had "unconfirmed insurance."

[SUMF ¶¶ 4-6]. Officer Yocum initiated a traffic stop at approximately 1:40 pm and approached

Plaintiff's vehicle. [SUMF ¶ 7]. Upon arriving at Plaintiff's driver's side window, Officer

Yocum saw Plaintiff holding a phone-like object aimed in his direction. [SUMF ¶ 8]. Officer

Yocum was unsure if the object was a phone or a phone-shaped gun, causing him to fear for his

safety. [SUMF ¶ 9]. Officer Yocum then told Plaintiff to lower the phone, and asked for

Plaintiff's registration, license, and proof of insurance. [SUMF ¶ 10]. Plaintiff did not give

Officer Yocum his license, insurance, or registration, and asked why he was being stopped.

[SUMF ¶ 11]. Officer Yocum informed Plaintiff that he stopped him due to having no proof of

insurance. [SUMF ¶ 12]. Plaintiff did not give Officer Yocum the requested information, and

1

Yocum told Plaintiff that his actions were impeding an investigation. [SUMF ¶ 13]. Following a brief exchange, Plaintiff eventually gave Officer Yocum the requested documents, which led Yocum to discover that Plaintiff's insurance had expired, and that Plaintiff was a probationer with a search waiver on file. [SUMF ¶¶ 14-20]. Plaintiff later admitted that he did not have insurance at the time of the stop. [SUMF ¶ 19].

Officer Yocum then reapproached Plaintiff's driver side window, where he ordered Plaintiff to exit the vehicle, and transported Plaintiff to the area behind his vehicle. [SUMF ¶ 21-22]. Plaintiff followed Officer Yocum to the area behind his vehicle and set his phone down on the vehicle's rear bumper. [SUMF ¶ 23]. After Plaintiff remained uncooperative and questioned the reasoning for the traffic stop, Defendants placed Plaintiff in handcuffs to detain him. [SUMF ¶¶ 24-25]. Officer Yocum ordered Plaintiff to remain in the area with Officer Dexter. [SUMF ¶ 26]. Officer Yocum then turned Plaintiff's phone recording off, approached Plaintiff's driver side door, and informed dispatch he would conduct a search of Plaintiff's vehicle. [SUMF ¶¶ 27-28]. Officer Dexter ordered Plaintiff to move towards the patrol cars on site, but Plaintiff remained uncooperative, prompting Dexter to push him towards the vehicles. [SUMF ¶ 29-32].

Upon reaching Officer Dexter's patrol vehicle, Plaintiff began running along the shoulder of Interstate 55 after Dexter reached for his vehicle's back passenger door handle. [SUMF ¶ 33]. Officer Dexter gave chase to Plaintiff, tackling him into the grassy area off of the shoulder of Interstate 55. [SUMF ¶ 34]. Plaintiff began asking why he was tackled, to which Officer Dexter told him a vehicle almost struck him, and informed Plaintiff that subsequent flight would result in Plaintiff getting tased. [SUMF ¶ 35-36]. Officer Dexter then helped Plaintiff to his feet and escorted him back towards the patrol vehicle without further incident. [SUMF ¶ 37]. As a result of Officer Dexter tackling him, Plaintiff sustained a bruise on the side of his hip. [SUMF ¶ 38].

Following his arrest, Plaintiff faced charges of careless and prohibited driving, obstruction, lack of liability insurance, and fleeing on foot. Plaintiff's charges were subsequently dropped. Plaintiff then filed suit against Defendants and the City of Marion, alleging violations to his Fourth and Fourteenth Amendment rights, malicious prosecution, and failure to train.

## <u>SUMMARY JUDGMENT STANDARD</u>

After the parties have had adequate time for discovery, a movant will be entitled to summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *Id*. at 323; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

The Supreme Court in *Celotex* said that the burden on the movant "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." 477 U.S. at 325. The Eighth Circuit has acknowledged that "this initial burden on the movant is 'far from stringent' and 'regularly discharged with ease.'" *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (quoting *St. Jude Med., Inc. v. Lifecare Int'l, Inc*., 250 F.3d 587, 596 (8th Cir. 2001)).

Once the moving party satisfies this initial burden, the nonmoving party "must respond by submitting evidentiary materials" of specific facts showing the presence of a genuine issue for trial. *Torgerson*, 643 F.3d at 1042. The nonmoving party must do more than raise some metaphysical doubt about the material facts and cannot rest on mere denials or allegations.

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). He must instead present

enough evidence that a jury could reasonably find in his favor. *Id*. The nonmoving party is

obligated to meet proof with proof. *Bolderson v. City of Wentzville*, 840 F.3d 982, 986 (8th Cir.

2016). The submission of materials that contain only unsubstantiated suspicions will not suffice

to meet the burden. *Id*.

## ARGUMENT

### I.    PLAINTIFF'S CLAIM OF ARREST WITHOUT PROBABLE CAUSE IS PROPERLY ANALYZED UNDER THE FOURTH AMENDMENT

Plaintiff alleges that Defendants "fabricated evidence to cause the State of Arkansas to

charge the Plaintiff with a crime without probable cause." Plaintiff asserts this allegation as a

violation of the Due Process Clause. Although Plaintiff claims the alleged arrest without

probable cause violated his Fourth and Fourteenth Amendment rights, Plaintiff's claim should be

analyzed under the Fourth Amendment only.

An arrest without probable cause claim is properly analyzed under the Fourth

Amendment. *Albright v. Oliver*, 510 U.S. 266, 274 (1994). When a particular Amendment

"provides an explicit textual source of constitutional protection" against a particular government

action, a plaintiff's claim must be analyzed under that Amendment. *Graham v. Connor,* 490 U.S.

386, 395 (1989). Thus, Plaintiff's claim should be analyzed under the Fourth Amendment and

his claim for a violation of the Due Process Clause fails as a matter of law.

### II.    PLAINTIFF'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED

#### A.    Separate Defendant, Michael Yocum had Probable Cause or at Least Reasonable Suspicion to Stop Plaintiff's Vehicle

"A traffic stop generally must be supported by 'at least a reasonable, articulable suspicion

that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—

4

creates probable cause to stop the driver of a vehicle.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (citation omitted).  Probable cause exists when the totality of the circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime. *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. at 175 (internal quotation omitted). A "reasonable ground for belief" means "more than bare suspicion," but "less than evidence which would justify condemnation or conviction." *Id*.

In the State of Arkansas, it is against the law to engage in texting or reading from or posting to a social networking site using a wireless telecommunications device while driving. Ark. Code Ann. § 27-51-1504. Further, it is unlawful for a person to operate a motor vehicle unless that person has "a certificate of self-insurance" or if their vehicle is covered by "an insurance policy issued by an insurance company authorized to do business" in Arkansas. Ark. Code Ann. § 27-22-104. The Arkansas Supreme Court has held that the lack of insurance information in the database used by police officers is sufficient to provide an officer with probable cause to believe that a traffic violation has occurred. *Cagle v. State,* 2019 Ark. App. 69, 5, 571 S.W.3d 47, 51 (2019). See *also Small v. State*, 2018 Ark. App. 80, 543 S.W.3d 516 (2018).

In the present case, Officer Yocum had probable cause to stop Plaintiff on suspicion of texting and driving. Officer Yocum first noticed Plaintiff while he was driving down Interstate 55. [SUMF ¶ 1]. Officer Yocum saw Plaintiff driving with a phone in hand at the level of

Plaintiff's steering wheel.[1] [SUMF ¶¶ 2-3].  While it appears that there are no Arkansas cases discussing what constitutes probable cause for the offense of texting and driving, the common-sense conclusion that could be reached by an officer observing someone driving down the road with a cell phone held in front of him at steering wheel height is that the person is texting and driving. *See Michigan v. Mountain*, 2018 WL 4573299, *3 (Mich. App. Sept. 18, 2018).

Officer Yocum called Plaintiff's license plate number into dispatch, which informed him that Plaintiff had "unconfirmed insurance." [SUMF ¶ 4]. Officer Yocum then performed a traffic stop based on probable cause, or at least reasonable suspicion, that Plaintiff was violating Arkansas law by texting while driving and driving without insurance. [SUMF ¶ 2-6].

### B.  There is No Evidence that Officer Dexter was Responsible for the Initial Stop of the Plaintiff

"Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum,* 808 F.3d 335, 340 (8th Cir.2015); *Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir. 2010). Therefore, in cases where multiple officers are involved, "[t]he doctrine of qualified immunity requires an *individualized* analysis of *each* officers' alleged conduct." *Walton v. Dawson,* 752 F.3d 1109, 1125 (8th Cir. 2014) (quoting *Roberts v. City of Omaha,* 723 F.3d 966, 974 (8th Cir. 2013)). This must be done to determine whether the factual allegations against each individual officer were sufficient to overcome qualified immunity. *Livers v. Schenck,* 700 F.3d at 351.

---

[1] Officer Yocum stated that he also saw Plaintiff's vehicle straddling multiple lanes of traffic. That fact, however, cannot be indisputably established, but is contained herein for context. Regardless, that fact is immaterial because, as will be discussed herein, there were multiple other lawful bases for the initial stop and subsequent arrest of the Plaintiff.

Here, there is no allegation in the complaint that Officer Dexter was responsible for the initial stop of the plaintiff and the only evidence regarding the initial stop is that Officer Yocum made the decision to stop the Plaintiff.  As a result, any claim that Officer Dexter illegally stopped Plaintiff must be dismissed.

### C.  Officers Yocum and Dexter had Probable Cause to Arrest Plaintiff

An arrest does not violate the Fourth Amendment if it is supported by probable cause. *Kiser v. City of Huron*, 219 F.3d 814, 815 (8th Cir. 2000); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir. 1990). If an officer has probable cause to arrest a citizen, no Fourth Amendment violation occurs, and the officer cannot be held liable. *Cooperwood v. City of Kensett*, 2006 WL 3735977, *2 (E.D. Ark. December 15, 2006) (citing *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995)). If an officer has probable cause for any offense, he may arrest an individual without that arrest constituting a violation of that individual's Fourth Amendment rights, even if the probable cause is not "closely related" to the reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The Supreme Court has held that an arrest for any criminal offense does not offend the Fourth Amendment if there is probable cause. *Virginia v. Moore*, 553 U.S. 164, 171 (2008). Stated differently, if "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence" the officer may arrest the individual without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

After Officer Yocum approached Plaintiff and tried to explain the reasoning behind the stop, Plaintiff initially refused to provide him with a license, registration, or proof of insurance. [SUMF ¶ 10-12]. During their encounter, Officer Michael Yocum told Plaintiff the reason for the

stop multiple times and informed Plaintiff that refusing to provide his license and registration was "impeding" an investigation. [SUMF ¶ 13]. Plaintiff eventually provided Officer Yocum with his driver's license and a document purporting to be his proof of insurance. [SUMF ¶ 14]. Officer Yocum returned to his patrol vehicle, where he confirmed that Plaintiff's insurance had expired. [SUMF ¶¶ 17-18].

After Plaintiff was pulled over, Officer Yocum indisputably had probable cause to arrest Plaintiff for driving without insurance (§ 27-22-104), as he confirmed that Plaintiff's vehicle did not have insurance. Indeed, Plaintiff admitted at his deposition that he did not have insurance on his vehicle at the time of the stop. [SUMF ¶ 19]. Additionally, Plaintiff refused to provide requested information to Officer Yocum, resulting in the obstruction of governmental operations as codified in Ark. Code Ann. § 5-54-102, which states that an individual commits obstruction of governmental operations if he "knowingly obstructs, impairs, or hinders the performance of any governmental function." Ark. Code Ann. § 5-54-102. The undisputed facts clearly demonstrate that Officer Michael Yocum had probable cause to arrest Plaintiff for obstruction of governmental operations and lack of liability insurance.

Officer Dexter also had probable cause arising from his interaction with Plaintiff to effectuate the Plaintiff's arrest. After Officer Yocum removed Plaintiff from the vehicle, Officer Dexter then tried to have Plaintiff walk to one of the patrol cars on site to detain him safely, but Plaintiff refused to move. [SUMF ¶ 29-32]. Once Officer Dexter and Plaintiff reached Dexter's patrol vehicle, Plaintiff turned and started fleeing alongside the shoulder of Interstate 55. [SUMF ¶ 33].

The circumstances present when Officer John Dexter tried to escort Plaintiff to the patrol cars show the existence of probable cause. Officer John Dexter repeatedly told Plaintiff to move,

but Plaintiff refused, forcing Officer Dexter to push him towards the patrol car. Plaintiff then turned and began to run once he and Officer Dexter reached the patrol car, which would lead a reasonable officer to believe Plaintiff was committing the criminal offense of fleeing, codified in Ark. Code Ann. § 5-54-125, which states that an individual cannot flee if he "knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer." Ark. Code Ann. § 5-54-125. These undisputed facts clearly demonstrate that Officer Dexter had probable cause to arrest Plaintiff for fleeing.

Defendants had probable cause to arrest Plaintiff for at least one of the charges for which he was arrested on August 9, 2021 and also for driving without insurance, for which Plaintiff was not charged. Therefore, it is not necessary for this Court to find that probable cause existed for each charge in order to find that Plaintiff's Fourth Amendment rights were not violated. Therefore, Plaintiff's claim against Defendants regarding a Fourth Amendment violation must be dismissed.

### III. THE CITY OF MARION DID NOT FAIL TO ADEQUATELY TRAIN ITS POLICE OFFICERS

Under Count Two of his Complaint, Plaintiff alleges that the City of Marion failed to train its police offers to prevent actions that violate Plaintiff's Fourth and Fourteenth Amendment rights. As shown above, there was no violation of Plaintiff's constitutional rights. Additionally, the training afforded the officers in this case easily defeats Plaintiff's failure to train claim.

The Eighth Circuit has repeatedly held that a plaintiff cannot hold a municipality liable for inadequate training if its officers do not violate a plaintiff's constitutional rights. *See Veneklase v. City of Fargo*, 248 F.3d 738, 748 (8th Cir. 2001); *Olinger v. Larson*, 134 F.3d 1362,

1367 (8th Cir. 2000), and *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Defendants maintain that the City did not violate Plaintiff's Fourth or Fourteenth Amendment rights, and there is no need to further address Plaintiff's claim of failure to train.

Even if the Court considers Plaintiff's claim, Plaintiff cannot establish a viable claim for failure to train. A municipality could be liable for deficient policies regarding training police officers if: (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them; and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

It is necessary to show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In *City of Canton*, the Supreme Court of the United States held that "limited circumstances" exist in which a "failure to train" allegation can serve as the basis for liability under 42 U.S.C. § 1983. *Id*. For example, the Court said that whether "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. While a plaintiff might be able to point to something a city "could have done" in almost every case to prevent an incident, that is not the standard for failure to train. *Id*.

The standard of deliberate indifference is objective; a governmental entity is liable if it has maintained a "policy in which the inadequacy is so likely to result in the violation of

constitutional rights" that the policy makers can be said to have been deliberately indifferent. *Moyle v. Anderson*, 571 F.3d at 818-819 (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)). A city will be liable "only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392 (8th Cir. 2007). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397.

In the present case, both Officers Dexter and Yocum received more than adequate training prior to their encounter with Plaintiff on August 19, 2021. The Marion Police Department's Policies and Procedures outlines how officers are expected to perform their duties, including policies about operating body-worn cameras, canine handling, learning local, state, and federal laws, use of force, and not making false statements. [SUMF ¶ 40]. The Marion Police Department requires an annual review of its program, to ensure its training policies adhere to changing laws, and keep department efforts transparent. [SUMF ¶ 41]. The Marion Police Department's has a required annual training program regarding biased policing, which all officers must complete. [SUMF ¶ 42]. The Marion Police Department also performs annual reviews of its officers. [SUMF ¶ 43].

Additionally, the training records of Defendants show that both received basic training from law enforcement academies, as well as additional training in various areas, including ethics, report writing, profiling, crime scene investigation, search and seizure training, and courtroom procedure. [SUMF ¶ 46-47]. The personnel files show that neither Officer Yocum nor Officer Dexter faced any disciplinary action during their time with the Marion Police Department, except

for a written warning received by Dexter due to his involvement in several car accidents. [SUMF ¶ 48].

Defendants' training exceeds that of training programs that have been found acceptable by the Eighth Circuit. For example, in *Andrews v. Fowler*, the Court found that approximately two weeks of on-the-job training with another officer followed by attendance at a police academy within one year of the date of employment was sufficient. *Andrews v. Fowler*, 98 F.3d at 1077. In *Liebe v. Norton*, the Court found that on-the-job training for two and one-half weeks, two training courses, and review of the county's manual of policies was sufficient. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

Officer Dexter was subjected to annual performance reviews and annual training. [SUMF ¶ 44]. Officer Yocum left the Marion Police Department before his annual review for a different position, but his personnel file did not reveal any complaints or disciplinary reports. [SUMF ¶ 45]. Both Defendants received training regarding their body cameras, firearm usage, standard policies, and how to avoid biased policing through annual training. [SUMF ¶¶ 46-47]. The training afforded Marion Police Department officers defeats Plaintiff's claim for failure to train. Plaintiff cannot prove that City's "inaction reflects a deliberate indifference to the constitutional rights of the citizenry." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 392 (8th Cir. 2007).

Finally, Plaintiff has no evidence that any of the City officials of the City of Marion Arkansas were on notice that its police officers had engaged in such a pattern of arresting citizens without probable cause that the failure to train the officers was either known, or should have been known, by the City officials, but the City officials deliberately chose not to undertake

more or different training of the officers.  Therefore, Plaintiff's claim of failure to train against the City of Marion must be dismissed with prejudice.

## IV.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has sued the Defendants, Michael Yocum and John Dexter, in their individual capacities in addition to their official capacities. Defendants pled the affirmative defense of qualified immunity. Qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *LaCross v. City of Duluth*, 713 F.3d 1155, 1157 (8th Cir. 2013); *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). Under this objective legal reasonableness standard, courts may not delve into the officers' subjective motivations for their actions. *Allen*, 712 F.3d at 1226. Qualified immunity allows officers to make reasonable errors and protects all but the plainly incompetent or those who knowingly violate the law. *Id*.

Qualified immunity is usually raised, as here, in a motion for summary judgment as an affirmative defense to claims. *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). The doctrine of qualified immunity "requires an individual analysis of each officers' alleged conduct." *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)). In order to overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The Court has the discretion to decide which question should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Defendants believe that the Court need

13

only address whether Defendants' actions constituted a violation of Plaintiff's constitutional rights. As shown above, the undisputed material facts demonstrate that Defendants did not violate Plaintiff's rights under the Fourth Amendment and the individual Defendants are entitled to qualified immunity.

However, even if Defendants violated Plaintiff's constitutional rights, they are still entitled to qualified immunity as they reasonably believed they had probable cause to arrest Plaintiff. To conclude that the right the government official allegedly violated is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635, 107 S. Ct. 3034, 3037 (1987). This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably ... anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). While the Fourth Amendment right of citizens to be free from arrest without probable cause is clearly established, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that there is probable cause to do so, provided the mistake is objectively reasonable. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008-1009 (8th Cir. 2017).

Applying the standards cited above to Defendants, Officer Yocum and Officer Dexter are each entitled to qualified immunity. Defendants reasonably believed they had probable cause to arrest Plaintiff. Officer Yocum saw Plaintiff driving with a phone in hand in front of him at steering wheel level before he initiated the traffic stop. [SUMF ¶ 2]. Also, prior to initiating the traffic stop, dispatch informed Officer Yocum that Plaintiff did not have confirmed insurance,

providing Yocum the probable cause that Plaintiff was committing a traffic violation. [SUMF ¶¶ 4-6]. During the traffic stop, Yocum discovered that Plaintiff's insurance had expired. [SUMF ¶ 18]. Officer Yocum reasonably believed he had probable cause to arrest Plaintiff for lack of insurance. Additionally, Officer Yocum had to ask Plaintiff for his license and registration multiple times, to which Plaintiff responded with questions of his own. [SUMF ¶ 10-13]. Officer Yocum reasonably believed he had probable cause to arrest Plaintiff for obstruction of governmental operations. Officer Dexter witnessed Plaintiff start running alongside Interstate 55 after he was detained by Defendants. [SUMF ¶ 33]. Officer Dexter reasonably believed he had probable cause to arrest Plaintiff for fleeing.

Even if the above listed facts are not considered at least reasonable suspicion for the initial stop of the Plaintiff and probable cause for his arrest, Plaintiff can present no evidence that the violation of his rights under these circumstances was so clearly established on August 9, 2021, that every reasonable officer should have understood that.

At the time of Plaintiff's arrest, an allegation of malicious prosecution by itself did not constitute a constitutional injury sufficient to support a claim under 42 U.S.C. § 1983. *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990). The Supreme Court first held that a malicious prosecution claim was "actionable under the Fourth Amendment" in 2022, making the right against malicious prosecution a "clearly established right" for qualified immunity purposes. *Thompson v. Clark,* 596 U.S. 36 (2022). Prior to the Supreme Court deciding *Thompson,* the Eighth Circuit consistently declined to decide if a Plaintiff has a Fourth Amendment right against malicious prosecution. *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676 (8th Cir. 2012); *Bates v. Hadden*, 576 Fed.Appx. 636 (8th Circ. 2014). Thus, Plaintiff's right to be free from a malicious prosecution was not clearly established at the time of his arrest on August 9, 2021.

Since Defendants did not violate Plaintiff's clearly established constitutional rights and reasonably believed they had probable cause to arrest him, Plaintiff cannot show that either prong of the qualified immunity analysis has been met. Accordingly, the individually named Defendants are entitled to qualified immunity.

## V.    PLAINTIFF WAS NOT SUBJECTED TO A MALICIOUS PROSECUTION

### A.  Plaintiff was not subjected to a malicious prosecution under 42 U.S.C. § 1983

For a plaintiff to show that he was subjected to a malicious prosecution under 42 U.S.C. § 1983, he must show that (1) the suit or proceeding was instituted without probable cause (2) the motive in instituting the suit was malicious and (3) the prosecution terminated in the acquittal or discharge of the accused. *Thompson v. Clark*, 596 U.S. 36, 44 (2022). "A Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 564 (2024). "Malicious-prosecution claims require 'a want for probable cause *for the prosecution*,' not a want of probable cause for unprosecuted offenses." *Nygard v. City of Orono*, 39 F.4th 514, 523 (8th Cir. 2022). The question in a malicious-prosecution claim is whether there was "probable cause to believe that the defendant was guilty of the offense charged." *Id*.

In the present case, Plaintiff was arrested based on probable cause for each of the offenses listed in his Complaint. As discussed above, Defendants had probable cause to arrest Plaintiff for lack of liability insurance, obstruction of governmental operations, and flight. Since Defendants had probable cause to arrest Plaintiff for each of the charges brought against him, Plaintiff has failed to establish an essential element for a malicious prosecution claim brought under 42 U.S.C. § 1983.

Further, according to *Chiaverini*, "even when a detention is justified at the outset, it may become unreasonably prolonged if the reason for it lapses." *Id*. at 563.  The Court went on to give an example of two charges, one valid and one invalid, with the prosecution dropping the valid charge, but not the invalid charge that caused the arrestee to remain in jail. "The inclusion of the baseless charge—though brought along with a good charge—has thus caused a constitutional violation, by unreasonably extending the pretrial detention."  *Id.* Here, Plaintiff has no evidence that his pretrial detention of the Plaintiff was extended by any one of the charges and that there was no probable cause for the charge that caused the extension of his detention. Therefore, Plaintiff's malicious prosecution claim brought against Defendants under 42 U.S.C. § 1983 must be dismissed.

### B.  Plaintiff was not subjected to a malicious prosecution under Arkansas law

For a plaintiff to show he was subjected to a malicious prosecution under Arkansas law, the following elements must be established: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, 454 S.W.3d 200, 201 (citing *Sundeen v. Kroger*, 355 Ark. 138, 142, 133 S.W.3d 393, 395 (2003)). Malice has been defined as any improper or sinister motive for instituting the suit. *Hollingsworth v. First Nat'l. Bank & Trust Co. of Rogers*, 311 Ark. 637, 640, 846 S.W.2d 176, 178–79 (1993) (citing *Cordes v. Outdoor Living Ctr.*)). Probable cause for prosecution must be based upon the existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged. *Hollingsworth*, 311 Ark. at 640, 846 S.W.2d at 179.

As discussed above, Defendants had probable cause to arrest Plaintiff for lack of liability insurance, obstruction of governmental operations, and flight. Since Defendants had probable cause to arrest Plaintiff, Plaintiff has failed to establish an essential element for a malicious prosecution claim brought under Arkansas law.

Therefore, Plaintiff's malicious prosecution claim brought against Defendants under Arkansas law must be dismissed.

## VI.    THE CITY OF MARION IS NOT LIABLE FOR ANY CONSTITUTIONAL VIOLATIONS ALLEGED BY PLAINTIFF

Plaintiff has sued Officer Yocum and Officer Dexter in their official capacity. Lawsuits against municipal employees in their official capacities are tantamount to a lawsuit against the municipality itself. *Rogers v. City of Little Rock, et al.*, 152 F.3d 790, 800 (8th Cir. 1998). Thus, the suit against Officer Yocum and Officer Dexter in their official capacities is an action against the City of Marion.

With respect to the federal constitutional claims under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, any "person" acting under color of state law who subjects another to the deprivation of constitutional rights shall be liable to the injured party. A local government body such as a city is considered a "person" subject to § 1983 liability. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005). Such a governmental body may not be held vicariously liable, however, for the unconstitutional acts of employees. Supreme Court jurisprudence has clearly established that a plaintiff, seeking to impose liability on a municipality under § 1983, must identify a policy or custom that caused the plaintiff's injury. *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This ensures "that a municipality is held liable only for those deprivations resulting from the decisions

of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." *Id*. at 403-404.

A "policy" is an official policy, "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Id. A municipal policy is not unconstitutional if it might permit unconstitutional conduct in some circumstances; it is unconstitutional only if it requires its officers to act unconstitutionally. *Handle v. City of Little Rock*, 772 F. Supp. 434, 438 (E.D. Ark. 1991) (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989)) (emphasis added). A policy which does not "affirmatively sanction" unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy. *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009); *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008); *Dick v. Watonwan County*, 738 F.2d 939, 943 (8th Cir. 1984).

In the absence of a policy, a plaintiff may seek to establish municipal liability under § 1983 by establishing that a custom or practice of unconstitutional conduct exists. In order to do so, a plaintiff must prove (1) the existence of a continuing, widespread pattern of unconstitutional misconduct by employees; (2) deliberate indifference to or tacit authorization of such misconduct by the governmental entity's policymaking officials after notice to the officers of the misconduct; and (3) the custom was the moving force behind the constitutional violation. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The prior pattern of unconstitutional conduct "must be so persistent and widespread as to have the force and effect of law" and the pattern must have caused the plaintiff's alleged injury. *Rogers v. City of Little Rock, et al*., 152 F.3d at 799; *Andrews v. Fowler*, 98 F.3d at 1075 (8th Cir. 1996). Plaintiff must further show that City officials had knowledge of prior incidents of misconduct and deliberately failed to take

remedial action. *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992). Furthermore, there must also be some showing that the prior complaints had merit. *Rogers*, 152 F.3d at 799; *Handle*, 772 F. Supp. at 437.

Plaintiff can present no evidence that the City of Marion Arkansas had either an official policy of stopping and/or arresting citizens in violation of their Fourth Amendment rights. Consequently, the claims against the City of Marion must be dismissed.

Respectfully Submitted,

**DEFENDANTS**

By:    M. KEITH WREN, #94107
       P.O. Box 38
       North Little Rock, AR  72115-0038
       Tel: (501) 374-3484, ext. 163
       Email: mkwren@arml.org