IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS, DELTA DIVISION

DETONIO HAWKINS,                                           PLAINTIFF

v. CASE NO. 2:24-CV-00016-BSM

MICHAEL YOCUM, in his individual and official capacities,

and JOHN DEXTER, in his individual and official capacities,    DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this case, Plaintiff disputes the constitutionality of the stop, to the use of force, to the charging decision. Summary judgment must be denied where a reasonable jury could return a verdict for the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Here, Plaintiff Detonio Hawkins has disputed key facts going to the lawfulness of the initial stop, the justification for his arrest, the force used during detention, and the existence of probable cause. Accordingly, this Court must deny Defendants' motion.

**I.     THE COURT SHOULD DECLINE TO ADDRESS ISSUES OF STATE LAW**

*Frazier v. City of Pine Bluff*, 2017 U.S. Dist. LEXIS 115830, *32 held that a similar issue was unsettled question of state law that should be left to state courts to decide. The Arkansas courts are better suited to address Frazier's state law claims due to the novel nature of these claims and the intertwined issues of state statutory immunity. *Frazier v. City of Pine Bluff*, 2017 U.S. Dist. LEXIS 115830, *32. And in *Brown v. Berhndt*, No. 1:12-CV-00024-KGB, 2013 WL 6038822, at *5 (E.D. Ark. Nov. 14, 2013),

the exercise of supplemental jurisdiction is inappropriate given the "unsettled nature of Arkansas law" on these two issues. The Eighth Circuit holds that "federal courts should 'exercise judicial restraint and avoid state law issues wherever possible.' " *Thomas v. Dickel,* 213 F.3d 1023, 1026 (8th Cir.2000) (quoting *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990)). *Brown v. Berhndt*, No. 1:12-CV-00024-KGB, 2013 WL 6038822, at *5 (E.D. Ark. Nov. 14, 2013). Given the unsettled nature of these issues, the factors of judicial economy, fairness, and comity weigh against the normal practice to relinquish supplemental jurisdiction after dismissing the federal claims. *Brown v. Berhndt,* No. 1:12-CV-00024-KGB, 2013 WL 6038822, at *6 (E.D. Ark. Nov. 14, 2013). *Quinn v. Ocwen Fed. Bank FSB,* 470 F.3d 1240, 1248–49 (8th Cir.2006) holds that the federal court's retaining jurisdiction was appropriate where plaintiffs' claims "derive [d] from a common nucleus of operative fact, and if considered without regard to their federal or state character, [were] such that they would ordinarily be expected to be adjudicated in one judicial proceeding" and the state-law claims in the case "concern[ed] well-settled principles of contract, tort, statute and equity." But the issues surrounding Plaintiff's malicious prosecution claims and associated immunities are not well-settled. Thus, in the event the Court agrees, Plaintiff moves to dismiss his federal claims and to remand this matter back to state court

## Ii. DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT ON THE FOURTH AMENDMENT CLAIMS

There are genuine issues of material fact that preclude summary judgment. To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that

his prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 39, 142 S. Ct. 1332, 1335 (2022). To succeed on a malicious prosecution claim, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person. See *Thompson* v. *Clark*, 596 U. S. 36, 43, 142 S. Ct. 1332, 212 L. Ed. 2d 382, and n. 2 (2022). *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558-59, 144 S. Ct. 1745, 1748 (2024) holds that valid charges do not insulate Defendants from a Fourth Amendment malicious-prosecution claim relating to the invalid charge. Here, Plaintiff was arrested for fleeing and obstruction without a factual basis for the charges, and the charges were dismissed. Thus, summary judgment should be denied, and this matter should proceed to trial.

**A. The Initial Stop Was Not Justified by Probable Cause or Reasonable Suspicion**

Defendants argue Officer Yocum had probable cause to stop Plaintiff based on alleged cell phone use and unconfirmed insurance. But Plaintiff denies he was using a cell phone, denies he was driving in multiple lanes, and challenges the legal sufficiency of "unconfirmed insurance" as probable cause.  In *Erby v. State*, 2023 Ark. App. 220, ¶ 7, 663 S.W.3d 811, 816, Judge Thyer, in dissent, recognized that an "unconfirmed" insurance status does not establish probable cause for a stop where the system itself warns officers to rely on the driver's proof of insurance instead. Plaintiff complied with this instruction by producing his documentation. Whether a reasonable officer could believe that "unconfirmed" insurance in this case justified a stop is a question for the jury.

**B. Plaintiff Disputes the Allegation That He Fled**

Defendants assert that Plaintiff fled custody, justifying a use of force and further detention. However, Plaintiff denies fleeing, and instead asserts that he was tackled by Officer Dexter without justification, causing injuries to his thigh, ribs, and hip. This presents a classic dispute of material fact. Plaintiff's denial directly conflicts with the officer's version of events, creating a triable issue on whether the force used was excessive under the Fourth Amendment.

**C. Officer Dexter's Use of Force Was Unreasonable**

Plaintiff asserts that Dexter "slammed him to the ground" causing injuries that required hospital treatment. Defendants claim this was necessary to prevent Plaintiff from being struck by traffic, but Plaintiff denies he was near traffic or in danger. To determine whether an officer is entitled to qualified immunity, we ask: (1) whether the facts the plaintiff has presented, when viewed in his favor, show that the conduct of the officer violated a constitutional right, and (2) whether that constitutional right was clearly established at the time of the incident such that a reasonable officer would have known his or her actions were unlawful. Tatum v. Robinson, 858 F.3d 544, 547 (8th Cir. 2017) (citing Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014)).

   **A. Violation of a Constitutional Right**

In an excessive force case, "[a]n officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Hollingsworth v. City of St. Ann, 800 F.3d 985,

989 (8th Cir. 2015) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). Courts evaluate the objective reasonableness of the use of force by looking at the particular circumstances of each case, including "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officer or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting <u>Graham</u>, 490 U.S. at 396). But, a reasonable officer is not permitted to ignore changing circumstances and information that emerges once arriving on scene. <u>See Ngo v. Storlie</u>, 495 F.3d 597, 603 (8th Cir. 2007) ("[E]ven though Storlie was responding to a severe crime—a fellow officer had been shot—a reasonable officer arriving at the scene would have recognized that Ngo did not pose an immediate threat to the officers' safety or the safety of others."). Further, the law is clear that "[a] reasonable officer would know that it is unlawful to use deliberate or reckless falsehoods in a probable cause hearing, and therefore, Plaintiff's right to be free from such conduct by officers was 'clearly established,' fulfilling part of the qualified immunity test." *Odom v. Kaizer*, 864 F.3d 920, 922-23 (8th Cir. 2017) (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098-99 (8th Cir. 1996)). Thus, qualified immunity should be denied. Here, Plaintiff was accused of misdemeanors and denies fleeing, so the first two factors—the severity of the crime and the threat to safety—weigh against the reasonableness of the force used by Defendants. Plaintiff denies fleeing such that the there is a question of fact on whether the forced used was excessive.

**B. Clearly Established Right**

"The Fourth Amendment protects 'persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017) (quoting U.S. Const. amend. IV).

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) (citation omitted). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "'If either question is answered in the negative, the public official is entitled to qualified immunity.'" *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001)). "Although qualified immunity is an affirmative defense, the burden is on the

plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (Beam, J., dissenting). "A defendant official is entitled to summary judgment, if the record, when viewed in the light most favorable to the plaintiff, the non-moving party, reveals that there is no genuine issue as to any material fact regarding the immunity issue and that the defendant is entitled to judgment as a matter of law." *Walden v. Carmack*, 156 F.3d 861, 868 (8th Cir. 1998).

The 8th Circuit has said said many times that "[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009)). The "salient question" is whether the state of the law at the time the force was exerted gave Defendants "fair warning" that his alleged treatment of Hawkins was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). In June 2012, the state of the law would have given a reasonable officer fair warning that using physical force against a suspect who was not resisting or threatening anyone was unlawful. *Neal v. Ficcadenti*, 895 F.3d 576, 580-82 (8th Cir. 2018) citing *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) ("[T]he contours of the right at issue were sufficiently clear to inform a reasonable officer in Officer Hooper's position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee.")

Second, the law is clear that "[a] reasonable officer would know that it is unlawful to use deliberate or reckless falsehoods in a probable cause hearing, and therefore, Plaintiff's right to be free from such conduct by officers was 'clearly established,' fulfilling part of the qualified immunity test." *Odom v. Kaizer*, 864 F.3d 920, 922-23 (8th Cir. 2017) (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098-99 (8th Cir. 1996)).  Thus, qualified immunity should be denied.

### III. QUALIFIED IMMUNITY IS UNAVAILABLE WHERE FACTS ARE DISPUTED

Defendants argue they are entitled to qualified immunity because no clearly established law was violated. But Plaintiff has offered evidence that:

- He was stopped without probable cause,
- Was tackled despite not fleeing,
- And that Officer Yocum turned off his phone recording while Plaintiff was detained.

Here, Plaintiff had a right under Arkansas law to record. In relevant part, Ark. Code Ann. § 21-1-106 states:

**(a)** As used in this section:

**(1)**

**(A)** "Prohibit" means to interfere with the physical operation of a recording device by threat, duress, coercion, direct order, arrest, detention, or use of force.

**(B)** "Prohibit" does not include instances when there is no interference with the operation of the recording device or the person who operates it; and

**(2)** "Recording device" means a device that captures and records data or information, including without limitation a film camera, digital camera, tape recorder, or electronic sound recorder.

**(b)**

**(1)** A public officer or employee shall not:

**(A)** Prohibit a person from using a recording device carried on or near the person in a place that is open to and accessible to the general public or any private property where the person is lawfully present unless the act of recording or the location of the recording person:

**(i)** Presents a risk to the physical safety of anyone present, not including the person making the recording;

**(ii)** Is inside a public drinking water treatment facility and presents a risk to the public drinking water treatment facility;

**(iii)** Constitutes an element of a criminal offense;

**(iv)** Could reasonably be expected to lead to the infringement of copyrighted material;

**(v)** Appears to circumvent established procedures that ordinarily require permission for or payment in exchange for the viewing, use, reproduction, or recordation of data or information; or

**(vi)** Unreasonably obstructs or inhibits another person's lawful presence or movement;

**(B)** Delete any electronic data or any other information derived by recording from a recording device carried on or near the person against the wishes of the person possessing the recording device or otherwise destroy information contained in the recording device unless the data are considered contraband; or

**(C)** Seize or confiscate a recording device carried on or near the person using the recording device unless the recording device appears to be involved in the commission of a crime or unless the seizure is otherwise justified by an exigent circumstance.

Ark. Code Ann. § 21-1-106. Thus, Defendants have spoliated evidence such that Plaintiff is entitled to an inference that the video would have been unfavorable to them. *See Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111-12 (8th Cir. 1988) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoliation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth); *Rodgers v. CWR Constr. Inc.*, 343 Ark. 126, 33 S.W.3d 506, 510 (Ark. 2000) (noting that "spoliation is defined as 'the intentional destruction of evidence and [that] when it is established, the factfinder may draw an inference that the evidence destroyed was unfavorable to the party responsible for its spoliation,'" quoting *Goff v. Harold Ives Trucking, Co.*, 342 Ark. 143, 27 S.W.3d 387, 388 (Ark. 2000) (alterations omitted)). When the facts are viewed in the light most favorable to Plaintiff, a reasonable jury could find that Defendants violated clearly established rights. Thus, summary judgment based on qualified immunity is premature.

## IV. DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT ON MALICIOUS PROSECUTION

Defendants claim there was probable cause for all charges filed against Plaintiff, including fleeing and obstruction. But Plaintiff's evidence contradicts this:

- He produced his documents after requesting an explanation for the stop, and
- He denies fleeing, undermining the basis for that charge. With regard to the claims for malicious prosecution and false imprisonment, the existence of probable cause would be a defense to such actions. *Guidry v. Harp's Food Stores Inc*., 66 Ark. App. 93, 100, 987 S.W.2d 755, 758 (1999) *citing Mendenhall v. Skaggs Cos.*, 285 Ark. 236, 685 S.W.2d 805 (1985); *Kellerman v. Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998). But there is Arkansas case in which arguable probable cause, as used in the qualified-immunity analysis, rather than probable cause in fact was sufficient to sustain the defense. *Guidry v. Harp's Food Stores Inc*., 66 Ark. App. 93, 100, 987 S.W.2d 755, 758 (1999)(overruled on other grounds) Because probable cause is an essential element of malicious prosecution, and whether it existed is disputed, summary judgment must be denied on this claim.  Even so, if summary judgment is granted on Plaintiff's federal claims, this Court should remand the state court claims to the state court to determine these unsettled issues of state law in the first place.

## V. THE CITY OF MARION IS NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiff alleges a failure to train theory of Monell liability. While Defendants assert training existed, there is evidence that the Defendants were not disciplined for their conduct in this manner. Post-incident evidence is relevant to the existence of a custom or policy, from which a plaintiff may argue it was the moving force in the alleged

unconstitutional violation. *See Meier v. City of St. Louis, Mo.,* 934 F.3d 824, 828-29 (8th Cir. 2019) (plaintiff with Monell claim must establish, among other things, that municipality's policy or custom was a moving force behind the constitutional violation).

This conclusion is supported by decisions from courts in the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits. *See, e.g., Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("To be sure, post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (internal punctuation and quoted case omitted); *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1372 (9th Cir. 1998) ("[W]e reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."); Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3rd Cir. 1996) (similar subsequent events "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."); Foley v. City of Lowell, Mass., 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident."); Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (holding introduction of post-event evidence was not error: "Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (citing Grandstaff v. City of Borger, 767 F.2d 161, 171 (5th Cir. 1985)); Sherrod v. Berry, 827 F.2d 195, 205 (7th Cir. 1987), vacated on other grounds,

835 F.2d 1222 (7th Cir.), remanded for new trial, 856 F.2d 802 (7th Cir. 1988) (admission of post-event incident of excessive force was not an abuse of discretion; stating "subsequent conduct by a municipal policymaker may be used to prove preexisting disposition and policy.") (citing Grandstaff, 767 F.2d at 171); Grandstaff v. City of Borger, 767 F.2d at 171 ("As subsequent conduct may prove discriminatory motive in a prior employment decision, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and subsequent acts may tend to prove the nature of a prior conspiracy, see Anderson v. United States, 417 U.S. 211, 219, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1974), so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy."); Sanders v. City of Pembroke, 2020 U.S. Dist. LEXIS 101105, 2020 WL 3065918, at *12 (W.D. Ky. June 9, 2020) ("[I]n Monell cases, many courts have found that `[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.'" (quoting Bordanaro, 871 F.2d at 1156)); Abdur-Rahim v. City of Columbus, 2019 U.S. Dist. LEXIS 71056, 2019 WL 1873222, at *2 (S.D. Ohio Apr. 26, 2019) ("Similar subsequent incidents can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue, which would be relevant to Plaintiffs' Monell claims."); Cratty v. City of Allen Park, 2018 U.S. Dist. LEXIS 225492, 2018 WL 7351683, at *2 (E.D. Mich. May 21, 2018) (order of magistrate judge finding evidence of citizens' subsequent complaints and the city's treatment of them was discoverable for the plaintiffs claim that the city had an official policy to disregard alleged violations of citizens' rights), aff'd, 2018 U.S. Dist. LEXIS 99749, 2018 WL 3983806 (E.D. Mich. June 14, 2018) (order of district

judge); Groark v. Timek, 989 F.Supp.2d 378, 398 (D.N.J. 2013) ("Subsequent incidents, however, may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy."); Lindquist v. Arapahoe County, 2011 U.S. Dist. LEXIS 81414, 2011 WL 3163095, at *2 (D. Colo. July 26, 2011) ("some post-incident conduct may be relevant to a showing of an unconstitutional policy, custom or practice pursuant to Monell"); Mayes v. City of Hammond, 442 F.Supp.2d 587, 644 & n.14 (N.D. Ind. 2006) ("The Seventh Circuit has held that in some circumstances subsequent conduct taken by municipal officers may be used to prove a preexisting disposition and policy.") (citing Sherrod); Martinez v. Cornell Cons. of Texas, 229 F.R.D. 215, 223-24 (D.N.M. 2005) (compelling the production of evidence concerning similar claims without a timeframe and concluding that "subsequent acts or conduct may be admissible to establish municipal liability"); Richmond v. City of Brooklyn Center, 2005 U.S. Dist. LEXIS 47941, 2005 WL 6763198, at *6 (D. Minn. April 12, 2005) (post-incident complaints and reports were both probative and relevant to plaintiff's Monell claims to demonstrate that the City and its police department continued to condone and ratify the officers' conduct); Chalmers v. Petty, 136 F.R.D. 399, 404 (M.D.N.C. 1991) ("Subsequent acts or conduct may be used to establish municipal liability in actions brought pursuant to 42 U.S.C. § 1983."). Thus, summary judgment should be denied.

The Eighth Circuit has not addressed this issue but a few district court cases in this Circuit have questioned whether evidence of activity after the alleged constitutional violation can be used to establish municipal liability under § 1983. See Doe v. Gay, 2012 U.S. Dist. LEXIS 44572, 2012 WL 1078004, at *8 (E.D. Ark. Mar. 30, 2012) ("district courts within the Eighth Circuit have expressed doubts about whether evidence of activity

after the alleged constitutional violation can be used to establish municipal liability under section 1983."). Significantly, the cases cited in Doe did not reject evidence of subsequent similar events on relevancy grounds. See id. (citing Jenkins v. St. Louis Cnty., 2011 U.S. Dist. LEXIS 134574, 2011 WL 5868310, at *12 & n.6 (E.D. Mo. Nov. 22, 2011) (questioning the Fifth Circuit's Grandstaff decision but not addressing the issue of relevancy of subsequent events); Youa Vang Lee v. Anderson, 2009 U.S. Dist. LEXIS 41576, 2009 WL 1346147, at *6 & n.6 (D. Minn. May 13, 2009) (same; though recognizing "it may be possible that liability can be established by a pattern of shocking and egregious activity by a municipality after a constitutional violation.")). And notably, when a district court in the Eighth Circuit did address the relevancy of subsequent similar events to a plaintiffs' Monell claims, the court concluded the evidence was relevant and discoverable. Richmond, 2005 U.S. Dist. LEXIS 47941, 2005 WL 6763198, at *6 (post-incident complaints and reports were relevant to demonstrate that the City and its police department continued to condone and ratify the officers' conduct.). *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 U.S. Dist. LEXIS 228094, at *19-24 (E.D. Mo. Dec. 4, 2020). Thus, there is sufficient evidence to support a Monell claim, and summary judgment should be denied.

## VI.    CONCLUSION

Plaintiff has provided competent evidence disputing the legality of the traffic stop, the justification for arrest, and the reasonableness of the force used. These disputes are genuine and material. Accordingly, summary judgment must be denied in the event the matter is not remanded to state court..

                          Respectfully Submitted,

                          Luther Oneal Sutter, ARBN 95031
                          **SUTTER & GILLHAM, P.L.L.C.**
                          PO Box 2012
                          Benton, AR  72015
                          (501)315-1910 Office
                          (501) 315-1916 Facsimile
                          luther.sutterlaw@gmail.com

By:    */s/ Luther Oneal Sutter*_____
          Luther Oneal Sutter, ABN 95031